IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

ROBERT CARLTON POWELL, III
     Petitioner,

v.                              CASE NO.  1:17-cv-158-MW-GRJ

SEC'Y, DEP'T
OF CORR.[1],
     Respondent.
_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by filing a *pro se* petition for a writ of

habeas corpus under 28 U.S.C. § 2254, which he amended. ECF Nos. 1 &

4. Respondent has filed a response, along with the relevant state-court

record. ECF No. 16. Petitioner did not file a reply. This case is therefore

ripe for review. Upon due consideration of the Petition, the response, and

the state-court record, the undersigned recommends that the Petition be

denied.[2]

---

[1] As of January 14, 2019, Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and should be substituted for Julie Jones.

[2] The Court has determined that an evidentiary hearing is not warranted because the Court may resolve the Petition on the basis of the record. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

1

## I. State-Court Proceedings

The state charged Petitioner, along with co-defendants Lionel Robinson and Travis Simpson, with one count of armed robbery in violation of Sections 812.12(2)(a) and 775.087(2)(a), Florida Statutes (2010). All three men are African-American. At trial, the alleged victim, Jimmy Bouie, testified that he was robbed at gunpoint by three men while he was parked at an apartment complex, although he could not see the men's faces because it was dark and they wore masks. Bouie testified that the men ran off and fled in a small, green, four-door sedan.

Sergeant Barry Kays testified that he pursued the suspect vehicle until it accelerated and crashed into a tree. Sergeant Kays further testified that the driver, whom he identified as co-defendant Simpson, exited the vehicle while it was still moving and fled on foot. He stated that two other people exited the vehicle, but he was unable to see their faces. After apprehending Simpson, police officers retrieved a firearm near where he saw Simpson flee from the vehicle.

Sergeant David Blizzard testified that he observed Petitioner walking across the street after hearing reports of two suspects fleeing from Sergeant Kays. Sergeant Blizzard believed that Petitioner matched the

2

description given of a young black male wearing dark clothes. Sergeant Blizzard claimed that Petitioner was panting "like he had been running hard and fast." After initiating a conversation with Petitioner, Sergeant Blizzard claimed that Petitioner began to vomit. Sergeant Blizzard testified that he asked Petitioner what he was doing in the area, to which Petitioner responded that he was just walking around because it was a nice night. Sergeant Blizzard patted down Petitioner but did not find a firearm.

Officer John Pandak, who interviewed Petitioner, testified that Petitioner claimed he was out walking on the evening of the robbery and simply walked through the apartments where he was apprehended at a shortcut. Officer Pandak further testified that Petitioner's home was approximately eight miles from the apartment complex. Latent Fingerprint Expert Melissa Kilmer testified that she matched Petitioner's fingerprint to the fingerprint lift taken from a Sprite can recovered from inside the suspect vehicle. Crime lab analyst Jason Hitt testified that he was able to match Petitioner's DNA to that recovered from a cigarette butt found in the suspect vehicle.

Attorney Ileana Haedo represented Petitioner at trial. On May 30, 2012, a jury found Petitioner guilty of armed robbery with a firearm. ECF

No. 16-1 at 127-28. Petitioner was sentenced to a period of twenty-five years' imprisonment with credit for 535 days' time-served. *Id.* at 147. Petitioner filed a belated appeal to the First District Court of Appeal (DCA). *Id.* at 156-57. The First DCA *per curiam* affirmed Petitioner's conviction and sentence on May 29, 2014, and issued a mandate on August 5, 2014. ECF No. 16-10 at 14, 27.

Petitioner then filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure on August 29, 2014. ECF No. 16-10 at 29-44. The state habeas court denied the motion on February 10, 2017. *Id.* at 48-53. Petitioner did not appeal the denial of his 3.850 motion. ECF No. 4 at 3-4, 7, 9, 12; ECF No. 16 at 7. Petitioner then initiated the instant federal habeas proceeding on June 22, 2017. ECF No. 1. His First Amended Petition asserts the following grounds for relief:

1) Trial counsel was ineffective for failing to present an adequate post-verdict motion for judgment of acquittal based on insufficiency of the evidence;

2) Trial counsel was ineffective for advising Petitioner not to testify at his trial;

3) Trial counsel was ineffective for failing to present evidence in support of a comment she made during opening statements; and,

4) The trial court deprived Petitioner of equal protection of the law by allowing the state to use all five peremptory strikes to remove minorities from the venire panel.

ECF No. 4 at 4-15.

## II. Scope of Federal Habeas Review

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. §§ 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

As to a petitioner's exhausted claims, under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state

court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see also* § 2254(e)(1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions

demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-06 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams*, 529 U.S. at 362). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even

7

require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

In *Gill*, the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests. The court acknowledged the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference. 633 F.3d at 1288 (citing *Harrington v. Richter*, 526 U.S. 86 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S. Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also

8

consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5th Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he

was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*. To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable

11

application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254

12

provides, the result is double deference and the question becomes whether

"there is any reasonable argument that counsel satisfied *Strickland's*

deferential standard." *Id*. Double deference is doubly difficult for a petitioner

to overcome, and it will be a rare case in which an ineffective assistance of

counsel claim that was denied on the merits in state court is found to merit

relief in a federal habeas proceeding.

### III. Discussion

### <u>Exhaustion</u>

In order to comply with the AEDPA's exhaustion requirements, a

petitioner must have "fairly presented" every issue raised in his federal

petition to the state's highest court, either on direct appeal or on collateral

review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). Here, Petitioner

presented Ground Four of his federal habeas petition in his direct appeal to

the First DCA, however, he did not present Grounds One through Three.

And although Petitioner asserted Grounds One through Three of his federal

petition in his Rule 3.850 motion, *see* ECF No. 16-10, Petitioner concedes,

and the Respondent acknowledges, that Petitioner did not appeal the

denial of his Rule 3.850 motion to the Florida appellate court. ECF No. 4 at

3-4, 7, 9, 12; ECF No. 16 at 7.

"In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial." *Pearson v. Sec'y, Dep't of Corr.*, 2018 WL 3636456, at *2 (11th Cir. 2018) (unpublished opinion), citing *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979). Petitioner's failure to appeal the denial of his Rule 3.850 motion thus deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. Accordingly, Petitioner failed to exhaust Grounds One through Three of the instant federal petition.

Although the Respondent acknowledges that Petitioner did not appeal the state postconviction court's denial of his Rule 3.850 motion, the Respondent nevertheless concedes that Petitioner exhausted his state court remedies as to Grounds One through Three by presenting the grounds in his motion for postconviction relief. For each of Grounds One, Two, and Three, Respondent states as follows: "In compliance with *Picard v. Connor*, 404 U.S. 270 (1971), and 22 U.S.C. § 2254(b), Petitioner exhausted his state court remedies on this ground by presenting this argument in his motion for postconviction relief. (Ex. Q)." ECF No. 16 at 15, 21, 25.

14

"[S]tates can waive procedural bar defenses in federal habeas proceedings," including exhaustion. *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016), quoting *Hills v. Washington*, 441 F.3d 1374, 1376 (11th Cir. 2006) (per curiam). However, a state's mere "failure to raise exhaustion does not constitute a waiver under AEDPA, which mandates that '[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, *expressly* waives the requirement.'" *Vazquez*, 827 F.3d at 996, quoting *McNair v. Campbell*, 416 F.3d 1291, 1304 (11th Cir. 2005) (emphasis added), quoting 28 U.S.C. § 2254(b)(3). A district court has discretion to accept or reject a state's exhaustion waiver. *See Thompson v. Wainwright*, 714 F.2d 1495, 1509 (11th Cir. 1983).

Here, the Respondent not only raised the issue of exhaustion but expressly conceded it and proceeded straightaway to presenting arguments as to the merits of Petitioner's claims. Respondent's concession is somewhat perplexing, however, in light of the fact that presenting claims in a Rule 3.850 without appealing its denial does not ordinarily exhaust the claims for federal habeas purposes. Moreover, despite conceding exhaustion, the Respondent, in its recitation of general habeas principles,

15

states that it "asserts all available procedural bars." ECF No. 16 at 11. It is not necessary to resolve this ambiguity, however, because for the reasons discussed below, the Petition is due to be denied on the merits.

### **Ground One**

In his first ground for relief, Petitioner asserts that his trial counsel was ineffective for making an inadequate motion for judgment of acquittal following his guilty verdict. ECF No. 4 at 5. According to Petitioner, counsel should have argued that the evidence at trial was insufficient to convict Petitioner of robbery because the state failed to present a *prima facie* case based on direct or circumstantial evidence that Petitioner actively participated in the underlying crime and knew his confederate was carrying a firearm, which is required for a finding of guilt on a charge of armed robbery. *Id.* Petitioner asserts he was prejudiced by counsel's ineffective assistance because, had counsel moved for a judgment of acquittal on the aforementioned grounds post-verdict, the trial court would have granted it.

Petitioner raised this claim in his state motion for postconviction relief. The state habeas court denied the claim on the grounds that the claim was essentially a challenge to the sufficiency of the evidence used to convict him, and a defendant cannot challenge the sufficiency of the evidence

16

underlying his conviction through a Rule 3.850 motion, particularly where there has been a direct appeal. ECF No. 16-10, citing *Betts v. State*, 792 So. 2d 589, 590 (Fla. 1st DCA 2001); *Johnson v. State*, 593 So. 2d, 208 (Fla. 1992); *Jones v. State*, 446 So. 2d 1059, 1061-62 (Fla. 1984).

The state court's denial of Petitioner's claim was not contrary to or an unreasonable application of Supreme Court law. The record reflects that, after the state rested, Petitioner's counsel moved for a judgment of acquittal as follows:

> Ms. Haedo: . . . Mr. Powell has been charged by way of information with robbery with a firearm. The evidence, as I recall it in this particular case – There is a gun that was admitted. The gun did not have Mr. Powell's fingerprints on the gun. Mr. Powell was never identified by Mr. Bouie as being the person that committed the actual robbery. Mr. Bouie made it very clear – and I know the Court heard – that he could not [see] any of the faces. They had masks on. Mr. Powell was not found with a mask. Mr. Powell was not found with monies consistent with what Mr. Bouie had indicated to the police that was taken. Mr. Powell was not found with a Bible. The only piece of evidence – two pieces, excuse me – of evidence in this case are the Sprite can that shows a palm print and, of course, a cigarette butt. We've heard from Jason Hitt as well as Dr. Tracey that it was a full hit of Mr. Powell's. However, you also heard, your Honor, that they have no idea how that got there. So looking at the case in the light most favorable to the state at this time, I do not believe there's evidence to convict Mr. Powell of a robbery, and certainly no evidence to convict Mr. Powell of a robbery with a firearm.
>
> The Court: All right. Response on Mr. --- as to Mr. Powell?

17

> [The state]: Your Honor, I think, In the light most favorable to the State, there is every inference there's sufficient – a prima facie case that a jury might find Mr. Powell was guilty of robbery.
>
> The Court: It is a jury question. The motion for JOA on behalf of Mr. Powell is denied.

ECF No. 16-5 at 197-198. Following the guilty verdict, Petitioner's counsel moved again for judgment of acquittal as follows:

> Ms. Haedo: . . . On behalf of Mr. Powell, I renew all the motions that previously were filed, all the objections, the motion to strike the panel, and move again for a JOA and judgment, notwithstanding the verdict, based upon insufficiency of the evidence.

ECF No. 16-6 at 202. Petitioner's assertion that counsel was ineffective for failing to move for judgment of acquittal post-verdict based on insufficiency of the evidence is clearly belied by the record. Counsel's failure to prevail on the motion alone does not render her representation constitutionally ineffective.

Accordingly, counsel was not deficient for failing to adequately move for post-verdict judgment of acquittal, nor did Petitioner suffer prejudice. Therefore, because the state court's application of *Strickland* was not contrary to, or an unreasonable application of, clearly established Supreme Court law, Petitioner's Ground One has no merit.

**Ground Two**

In Ground Two, Petitioner asserts counsel was ineffective for advising him not to testify at trial. Petitioner argues counsel should have permitted him to testify so that he could have explained why his fingerprint and DNA were found in the suspect vehicle. Petitioner's statement to law enforcement that he had never been inside the vehicle was introduced at trial, and because he was not permitted to testify to reconcile the inconsistency, the jury found his proclamation of innocence incredible. Petitioner further asserts that he was unable to explain to the jury that he was walking within the proximity of the crime scene because he had witnessed the armed robbery and then fled the scene of the crime.

Petitioner presented this claim to the state court in his motion for postconviction relief. He contended that, had he been properly advised to testify, he would have testified that: (a) he was present in the suspect vehicle with his co-defendants on the way to the armed robbery; (b) he was present with his co-defendants when the armed robbery occurred; (c) [he] got back into the suspect vehicle with his co-defendants after the armed robbery occurred; and, (d) [he] lied to law enforcement about not knowing

his co-defendants after he was arrested fleeing from the location of the armed robbery. ECF No. 16-10 at 50.

The state habeas court rejected this claim because Petitioner waived his right to testify under oath at trial. *Id.* at 51. The state habeas court further found that, had Petitioner testified, there is not a reasonable probability that his testimony would have affected the outcome of the trial because the testimony evidences that Petitioner knew the victim and arranged to meet with the victim with his co-defendants; the testimony places Petitioner with his co-defendants when the armed robbery occurred; the testimony demonstrates that Petitioner fled from the armed robbery with his co-defendants; and the testimony is inconsistent with Petitioner's statements to law enforcement at the time of his arrest. Accordingly, the state habeas court found that no reasonable attorney would have advised Petitioner to testify to those facts. *Id.* at 52.

Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide. *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992) (footnote omitted). If counsel believes that it would be unwise for the defendant to

20

testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify. *Id.* The defendant can then make the choice of whether to take the stand with the advice of competent counsel. *Id.* The first prong of the *Strickland* test would be met, however, "if defense counsel refused to accept the defendant's decision to testify and would not call him to the stand." *Teague*, 953 F.2d at 1534.

Here, a review of the record establishes that Petitioner's counsel represented to the trial court that she discussed with Petitioner his constitutional right to take the witness stand or not and that Petitioner declined and understood he was waiving his right to testify. ECF No. 16-5 at 209. Petitioner then acknowledged under oath his right to testify and that it was his decision not to testify at trial. *Id.* He further acknowledged that notwithstanding his attorney's advice or recommendation the ultimate decision whether or not to testify was his. *Id.* at 210. Petitioner then declared, "I do not want to testify," and stated he was satisfied with his attorney's representation. *Id.*

In the context of a plea hearing, the Supreme Court has stated that "the representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable

barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). This principle applies to other colloquies with the court, including a defendant's decision to waive his right to testify.

Petitioner's sworn testimony to the trial judge in open court is presumed to be truthful and conclusive, absent compelling evidence showing otherwise. Petitioner swore under oath to the trial court that his decision not to testify was his own decision, and he has provided no compelling evidence to the contrary.

Moreover, Petitioner fails to demonstrate prejudice. It is true that by testifying Petitioner could have presented his version of the events of that evening in his own words and given the jury the opportunity to weigh his credibility against the rest of the evidence. However, although Petitioner's proposed testimony might have explained why Petitioner's fingerprint and DNA were found in the suspect vehicle and why he was walking around alone in the vicinity of the crime scene on the night of the robbery, for the reasons given by the state postconviction court, there is not a reasonable probability that the result in this case would have been different had Petitioner testified. Petitioner does not establish counsel was ineffective,

22

that he was prejudiced thereby, or that the state court's application of *Strickland* was contrary to, or an unreasonable application of, clearly established Supreme Court law. Ground Two is without merit.

### Ground Three

In Ground Three, Petitioner asserts counsel was ineffective for failing to introduce evidence in support of a statement she made during her opening statement at trial. Trial counsel told the jury at opening, "You're going to hear that Mr. Powell was in the neighborhood and had access to the vehicle previously," but, according to Petitioner, counsel proffered no evidence in support of this statement. ECF No. 4 at 10. Petitioner argues that, had the jury heard evidence demonstrating he had access to the suspect vehicle previously, the jury would have acquitted him.

In rejecting this claim, the state postconviction court noted that there was evidence presented at trial establishing that the suspect vehicle was used as a neighborhood "taxi" and that Petitioner either lived in or was a regular in the neighborhood where the suspect vehicle was used as a taxi. ECF No. 16-10 at 52. Indeed, a review of the record reveals that Carl Robinson, the brother of Petitioner's co-defendant Lionel Robinson, testified that he had seen the car in the North Lincoln Heights

neighborhood and that the man who drives the car will "give you a ride wherever you want to go if you got some money," like an unofficial taxi service. ECF No. 16-5 at 230-40. Carl Robinson further testified that Petitioner and his family lived in the neighborhood. *Id.* The record therefore belies Petitioner's contention that counsel provided no evidence to support her statement at opening. The fact that Carl Robinson's testimony did not ultimately result in Petitioner's acquittal does not itself render counsel's performance constitutionally ineffective.

Petitioner does not establish counsel was deficient, that he was prejudiced thereby, or that the state court's application of *Strickland* was contrary to, or an unreasonable application of, clearly established Supreme Court law. Ground Three has no merit.

**Ground Four**

In his final ground for relief, Petitioner challenges the state court's denial of his equal protection challenge to the state's use of its peremptory strikes during jury selection.

In *Batson v. Kentucky*, the Supreme Court held that a prosecutor's use of peremptory strikes to preclude persons from serving on juries on account of their race violates the Equal Protection Clause of the Fourteenth

24

Amendment. 476 U.S. 79, 89 (1986). A defendant's *Batson* challenge to a

peremptory strike requires a three-step inquiry. First, the trial court must

determine whether the defendant has made a *prima facie* showing that the

prosecutor exercised a peremptory challenge on the basis of race. *Rice v.

Collins*, 546 U.S. 333, 338 (2006), citing *Batson*, 476 U.S. at 96-97.

Second, if the showing is made, the burden shifts to the prosecutor to

present a race-neutral explanation for striking the juror in question. *Id.*,

citing *Batson*, 476 U.S. at 97-98. Although the prosecutor must present a

comprehensible reason, "[t]he second step of this process does not

demand an explanation that is persuasive, or even plausible"; so long as

the reason is not inherently discriminatory, it suffices. *Rice*, 546 U.S. at

338, quoting *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (per curiam).

Third, the court must then determine whether the defendant has carried his

burden of proving purposeful discrimination by a preponderance of the

evidence. *Rice*, 546 U.S. at 338, citing *Batson*, 476 U.S. at 98; *Madison v.

Comm'r, Alabama Dep't of Corr.*, 761 F.3d 1240, 1251 (11th Cir. 2014),

citing *Johnson v. California*, 545 U.S. 162, 170 (2005) ("Thus, in describing

the burden-shifting framework, we assumed in *Batson* that the trial judge

would have the benefit of all relevant circumstances, including the

prosecutor's explanation, before deciding whether it was more likely than not that the challenge was improperly motivated.").

The final step of *Batson* involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Rice*, 546 U.S. at 338, quoting *Purkett*, 514 U.S. at 768. The objecting party may satisfy its burden of persuasion by showing that the moving party's race-neutral reasons were pretextual. *Madison*, 761 F.3d at 1251, citing *Miller–El v. Dretke*, 545 U.S. 231, 247-49 (2005). "[T]he issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible." *Madison*, 761 F.3d at 1251, quoting *Miller–El v. Cockrell*, 537 U.S. 322, 338-39 (2003). "Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy. *Id.*

Finally, the determination on the ultimate question of discriminatory intent [itself] represents a finding of fact of the sort accorded great deference on appeal. *Greene v. Upton*, 644 F.3d 1145, 1155 (11th Cir. 2011), citing *Hernandez v. New York*, 500 U.S. 352, 364 (1991) (quotations

26

omitted). *Batson* does not require elaborate factual findings. *Id.*, citing *Miller–El v. Cockrell*, 537 U.S. at 328-29; *Hightower v. Terry*, 459 F.3d 1067, 1072 n. 9 (11th Cir. 2006) ("We may therefore make 'the common sense judgment'—in light of defense counsel's failure to rebut the prosecutor's explanations and the trial court's ultimate ruling—that the trial court implicitly found the prosecutor's race-neutral explanations to be credible, thereby completing step three of the *Batson* inquiry.").

To grant relief under the AEDPA, "a federal habeas court must find the state-court conclusion 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Rice*, 546 U.S. at 338, quoting § 2254(d)(2). Thus, a federal habeas court can only grant [the] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge. *Id.* State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by "clear and convincing evidence." *Id.* at 338-39 (citations omitted).

In this case, the state used its first peremptory strike on prospective juror Wallys Minaya, however, defense counsel did not object to the strike or request a race-neutral justification. ECF No. 16-2 at 136. The state then

struck Thomas Miller, an African-American male, and defense counsel requested a race-neutral reason. *Id.* The prosecutor gave, as a race-neural justification, that Mr. Miller was unemployed and he did not like to have unemployed persons as jurors. *Id.* at 136-37.

Defense counsel argued that unemployment was not a race-neutral reason because it did not have anything to do with being fair and impartial. *Id.* at 137. The prosecutor then pointed out that the question under *Batson* was whether the justification for the strike was race-neutral, not whether the individual could be fair and impartial. *Id.* at 137-38. The court noted defense counsel's objection but determined that the race-neutral justification was genuine and struck Mr. Miller. *Id.* at 138.

The state then moved to strike Priscilla Monroe, an African-American female. *Id.* at 140. Defense counsel requested a race-neutral reason for the strike, to which the prosecutor replied:

> The first is her experience in which she had been arrested when she – by law enforcement in the 70s when she went to seek shelter due to domestic battery. The second is her job as a social worker. The third is that she made a spontaneous comment at defense questioning, indicating all the defendants look like babies. That obviously caused the state some concern, her commenting upon their age, and that may be a sign of bias.

*Id.* The court noted defense objections but overruled them on the record. *Id.* After the first round of jury selection, five prospective jurors remained. *Id.* at 144. Twenty-one people were then added to the jury pool. *Id.* at 144-47. After six jurors were accepted, the court asked for backstrikes. *Id.* at 206.

The state then moved to strike Bob Anderson, an African-American male. *Id.* at 207. After the court confirmed defense counsel's request for a race-neutral reason, the prosecutor cited a previous incident in which Mr. Anderson was arrested and ticketed for bicycling with music. *Id.* at 207. The prosecutor noted that Mr. Anderson had expressed he did not feel he was treated fairly by law enforcement during the incident. *Id.* The prosecutor also noted that Mr. Anderson expressed some confusion about principal theory and balancing the theory with having to prove a case beyond a reasonable doubt as to each defendant. *Id.*

In response, defense counsel argued that Mr. Anderson was inquisitive rather than confused regarding principal theory, and that she did not think he harbored any kind of ill will toward law enforcement following the bicycling incident and would be fair and impartial. *Id.* at 208-09. After hearing further argument from defense counsel, the trial court noted that, in

evaluating the prosecutor's reason for genuineness, it would sustain the

strike. *Id.* at 209-14.

The state then moved to backstrike a Caucasian male, "Professor

Nance," because he was a law professor and because he was a fan of the

film 12 Angry Men. *Id.* at 214. The prosecutor then moved to backstrike

Xavier Holmes, an African-American male, and stated as follows:

> . . . Judge, I move to strike juror number – I don't know his number,
> Xavier Holmes, 78. He is African-American, so I have one race neutral
> reason and I think I may have another, if the court may allow me to
> continue. But initially I think he also indicated he was treated unfairly
> when he was given a citation for having overcrowding at a house
> party, that he did not think that was a positive experience with law
> enforcement.
>
> I would also add that since he's been sitting here behind us, he has
> continually been yawning or expressing his inability to pay attention.
> I don't know if he has some issue going on with that, but I think if the
> court permitted us to inquire, there may be an issue. But I would rely
> on the issue that he does not feel he was treated fairly by law
> enforcement, as well as when he was being inquired as to Ms. Silver,
> he expressed some statement about requiring hard evidence, and I
> don't know what hard evidence means, but it implied at least that it
> was some – something more than circumstantial evidence, and
> circumstantial evidence is certainly sufficient for the state to proceed
> and obtain a conviction, as long as that is enough to meet a
> reasonable doubt standard.

*Id.* at 216-17. The court noted that Mr. Holmes had explained that "hard

evidence means somebody who was the defendant but not somebody

across the street. That's what his answer was, somebody who saw it

30

firsthand. He didn't say first-hand but the implication was not somebody across the street." *Id.* at 217. The prosecutor re-iterated his concern with Mr. Holmes' statement regarding hard evidence because the state did not have an eyewitness to identify any of the defendants as the robber in this case. *Id.* at 217-18.

In response, defense counsel argued that Mr. Holmes was good-natured about the citation he received for overcrowding at the house party and that Mr. Holmes' comments regarding hard evidence are insufficient to sustain a peremptory strike because there is eyewitness testimony of the suspect vehicle and DNA evidence. *Id.* at 218-19.

After further argument from defense counsel, the court asked the prosecutor: "Have you struck anybody but African Americans?" to which the prosecutor responded as follows:

> Judge, I struck Mr. Nance. He is Caucasian. And I don't know what ethnic history Mr. Minaya was. He may have been Latino, but I was under the impression he was Caucasian also. I struck both Mr. Anderson and Ms. Monroe, and I'd like Mr. Holmes for the same reason. All three of them felt they had a negative experience with law enforcement.

> I don't know if there's another individual who indicated they had a negative experience with law enforcement who I did not strike, and I think that's the issue. If I had left someone on the panel who had a negative experience who was of a different ethnic background or racial background, then I think there may be something to the defense

argument, but I think every individual who indicated they had a negative experience with law enforcement, whatever it was, I've stricken off the panel.

*Id.* at 220-21. The court accepted the prosecutor's justification for the strike and explained that Mr. Holmes' statement that "the witness testimony may not be sufficient unless it's somebody who was actually right there at the time" "is a legitimate reason for a strike to be exercised by any side." *Id.* at 221.

Finally, when defense counsel pointed out that the state struck "four or five" African-American jurors, the prosecutor noted that, in addition to striking a Caucasian male, he left one African-American male on the panel, and defense counsel struck another African-American male. *Id.*

On appeal, Petitioner argued that the state's use of 100 percent of its peremptory strikes to remove minorities from the venire in a trial of three African-American defendants was more than happenstance. Petitioner next argued that the state manipulated answers given by African-American venire members to justify their exclusion from the venire because, in striking Ms. Monroe, Mr. Anderson, and Mr. Holmes, the trial court misconstrued the nature of their prior run-ins with law enforcement as

32

"negative" and argued that the venirepersons could still render a fair and impartial verdict notwithstanding their criminal histories.

Petitioner further argued that the state improperly used an African-American juror's unemployment as a race-neutral justification for exclusion because the unemployment was unrelated to the facts of the case. Finally, Petitioner argued that the trial court erred by making no specific findings regarding the genuineness of the prosecutor's race-neutral justifications. ECF No. 16-9 at 34. The First DCA *per curiam* affirmed Petitioner's conviction and sentence without written opinion.

In his federal petition, Petitioner reasserts the grounds he raised in his direct appeal, however he fails to demonstrate he is entitled to habeas relief. ECF No. 4 at 13-15. As an initial matter, the record reflects the trial court properly applied the burden framework set forth in *Batson* regarding each peremptory challenge. As to each veniremember the prosecutor moved to strike, the court granted defense counsel's request for a race-neutral justification. The prosecutor proffered race-neutral justifications for each challenged veniremember. The trial court carefully evaluated the persuasiveness of the prosecutor's given justification and found the state's proffered rationale to be credible. Accordingly, the trial court properly

applied the *Batson* framework in this case, and the state court of appeals' decision denying Petitioner's equal protection challenge was not an unreasonable application of Supreme Court law.

Nor does the trial court's decision to credit the prosecutor's race-neutral explanations for the *Batson* challenges amount to an unreasonable factual determination in light of the evidence presented. The record shows that the state used four of its six peremptory strikes on African-Americans. It used the remaining two on Wallys Minaya, whose race was disputed[3], and Mr. Nance, a Caucasian male. Therefore, the state did not use all of its peremptory strikes on minorities, as Petitioner alleges.

Defense counsel did not object to or request a race-neutral justification for striking Mr. Minaya. The state proffered an independent, race-neutral justification for striking Mr. Miller—unemployment—which the trial court accepted after noting defense counsel's objection but determining that the justification was genuine. *See Madison*, 761 F.3d at 1253-55 (finding no clear error in district court's decision upholding employment/occupation-based strikes); *United States v. Walker*, 479 F.

---

[3] At jury selection, the prosecutor indicated he was under the impression that Mr. Minaya was Caucasian but that he "may have been Latino." ECF No. 16-2 at 220-21. On appeal, Petitioner argued that Mr. Minaya is Hispanic.

App'x 329, 331 (11th Cir. 2012) (Finding that "[t]he government articulated legitimate race-neutral reasons for its peremptory challenges—namely, that the first prospective juror was unemployed.").

As to Ms. Monroe, Mr. Anderson, and Mr. Holmes, the state cited, among other reasons, prior negative contact with law enforcement as a race-neutral justification, which is not inherently discriminatory especially given the fact that the state moved to strike all venirepersons with prior negative contact with law enforcement. *See Brannan v. GDCP Warden*, 541 F. App'x 901, 905 (11th Cir. 2013) (being previously charged with a criminal offense is a race-neutral reason); *McNair v. Campbell*, 416 F.3d 1291, 1312 (11th Cir. 2005) (prior misdemeanor conviction is a plausible, race-neutral justification especially where prosecutor struck white venire members who had prior misdemeanor convictions).

As to Ms. Monroe, the trial court noted defense counsel's objections but overruled them on the record. As to Mr. Anderson, the court evaluated the prosecutor's justification for genuineness and sustained the challenge. Although Petitioner asserts that the state mischaracterized the prior encounters with law enforcement as "negative" in order to justify the strikes, Petitioner points to no evidence to support his claim of pretext and

35

therefore fails to rebut the state court's finding by clear and convincing evidence.

As to Mr. Holmes, the trial court, after a searching inquiry, explained that because Mr. Holmes expressed reservations about crediting non-eyewitness testimony, the strike was justified. Accordingly, the trial court ruled that defense counsel did not meet its burden of showing that the state acted with discriminatory intent or that its justifications were pretextual, and the Petitioner fails to rebut the finding by clear and convincing evidence.

Finally, to the extent Petitioner argues that the trial court did not make specific fact-findings as to Ms. Monroe and Mr. Anderson, *Batson* does not require elaborate factual findings, and the trial court's determination on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference. *See Miller-El v. Dretke*, 545 U.S. at 240 (A state court's finding of no discriminatory intent is a fact-finding entitled to deference and "we presume the . . . court's factual findings to be sound unless [Petitioner] rebuts the 'presumption of correctness by clear and convincing evidence'"). Petitioner has not met his burden of rebutting the presumption that the state court's factual findings are sound by clear and convincing evidence. Because the state court of appeals' decision denying

36

Petitioner's equal protection challenge was not an unreasonable application of Supreme Court law or an unreasonable determination of the facts in light of the evidence presented, Ground Four has no merit and should be denied.

## V. Conclusion

Upon a review of the record and the state court's disposition of Petitioner's claims, and mindful of the high degree of deference that is afforded to the state court's assessment of Petitioner's claims, the Court concludes that Petitioner has presented no basis for federal habeas relief.

## VI. Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VII. Recommendation

Accordingly, it is respectfully **RECOMMENDED:**

1. The First Amended Petition for writ of habeas corpus under 28 U.S.C. § 2254, ECF No. 4, should be **DENIED**.

2. A certificate of appealability should be **DENIED.**

**IN CHAMBERS** this 9th day of April 2019.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy**

thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.